L.C. and K.C. et al., Plaintiff,

v.

**UTAH STATE BOARD OF EDUCATION, et al., Defendants.**

No. 2:98–CV–00207C.

United States District Court,
D. Utah,
Central Division.

Feb. 28, 2002.

Mark W. Dykes, Ralph R. Mabey, Leboeuf Lamb Greene & Macrae LLP, Salt Lake City, UT, Keith A. Kelly, Ray Quinney & Nebeker, Salt Lake City, UT, Dee R. Chambers Layton, UT, Julie I. Valdes, Utah Attorney General's Office, Salt Lake City, UT, for L.C. individual and as guardian on behalf of N.C.

Scott D. Cheney, Peggy E. Stone, Utah Attorney General's Office Litigation Unit, Salt Lake City, UT for Utah State Board of Education, Ogden City School District, Steven O. Laing, Mae Taylor, Ginger Rhode, Ted Adams.

## ORDER

CAMPBELL, District Judge.

This matter comes before the court on a motion for summary judgement brought by Defendants Utah State Board of Education, the Utah State Office of Edu-

cation, the State Superintendent in his official capacity, and the Federal and State Compliance Officer, Mae Taylor, in her official and individual capacities, Ogden School District and several District administrators in their official capacities (unless otherwise noted, all will be referred to collectively as "Defendants"). Defendants move for summary judgement on several grounds, asserting: 1) Plaintiffs cannot sue under 42 U.S.C. § 1983 for IDEA violations; 2) Plaintiffs failed to state a claim for violations of IDEA's due process guarantees; 3) State defendants are entitled to immunity from § 1983 liability under the Eleventh Amendment; and 4) Defendant Taylor is entitled to qualified immunity. For the reasons set forth below, the court GRANTS Defendants' motion for summary judgement.

## Background

Parents L.C. and K.C. brought this lawsuit on their own behalf and on behalf of their son N.C., who has been diagnosed as learning disabled and communication disordered. N.C. attended schools within the Ogden City School District from first grade through the end of seventh grade. He had received special education services from the school district, designed by district staff and L.C. and K.C. through individual education plan (IEP) meetings. L.C. and K.C. allege that as N.C. grew older, the school's unwillingness to provide him with an appropriate IEP plan and special education services caused N.C. increasing distress. This distress impeded N.C.'s academic progress, and caused him severe anxiety. N.C.'s anxiety increased, finally causing him to be hospitalized for three weeks in the spring of 1995. After N.C.'s distress continued and IEP meetings with school staff conducted in April 1995 and January 1996 proved unsuccessful, L.C. and K.C. removed N.C. from the Ogden City School District and placed him

in a private school, Special Education Program Services (SEPS).

On September 30, 1996, L.C. and K.C. requested a "due process hearing" under the Individuals with Disabilities in Education Act (IDEA) to enforce N.C.'s right to receive a free and appropriate public education. IDEA allows parents to request a hearing when a school "refuses to ... change the identification, evaluation, or educational placement of the child...or the provision of a free appropriate public education to the child...." 20 U.S.C. § 1415(b)(3)(B). IDEA also establishes procedures for evaluating parental complaints, stating that "[w]henever a complaint ... has been received ... the parents involved in such a complaint shall have an opportunity for an impartial due process hearing ...." 20 U.S.C. § 1415(f)(1); see also Utah Code Ann. § 53A–15–305 (providing for dispute resolution procedures in the context of IDEA claims).

During the first week of December 1996, Dr. Cregg Ingram was appointed as the hearing officer after both the school district and the parents submitted names of acceptable candidates, and Dr. Ingram's name had appeared on both lists. An initial pre-hearing conference was scheduled for January 1997.

The school district subsequently withdrew its consent to Dr. Ingram's appointment, and he recused himself. On January 17, 1997, defendant Mae Taylor, State Coordinator and Compliance Officer for Special Education Programs, appointed Dr. Ralph Haws as a replacement hearing officer. Pre-hearing conferences were conducted on January 24, 1997, and on February 14, 1997. The hearing was conducted on April 10–11, May 23, and June 27, 1997. Ms. Taylor appeared as an expert witness on behalf of the school district. Dr. Haws rendered his final de-

cision and order on November 3, 1997, denying L.C. and K.C.'s requests for relief.

L.C. and K.C. filed their request for an administrative appeal on November 10, 1997. *See* 20 U.S.C. § 1415(g) (stating "[i]f the hearing ... is conducted by a local educational agency, any party aggrieved by the findings and decision ... may appeal to the State educational agency. Such agency shall conduct an impartial review of such decision."); *see also* Utah Code Ann. § 53A–15–305(7) (establishing procedures for selecting review panel). Because the school district and parents were unable to agree on the composition of the appeals panel, the State Superintendent of Public Instruction appointed the three panel members on December 10, 1997. L.C. and K.C. allege that Taylor then "improperly instructed the appeals panel how to affirm the due process hearing." (Third Am. Compl. at ¶ 53(e)). The panel issued its opinion on February 3, 1998, affirming Dr. Haws's decision.

L.C. and K.C.[1] brought this lawsuit on March 23, 1998, alleging the following claims:

1. Under 20 U.S.C. § 1400 et seq. (IDEA), claiming that the substantive outcome of the IDEA hearing process violated N.C.'s right to receive a free and appropriate public education;

2. Under 42 U.S.C. § 1983, claiming that the defendants failed to provide N.C., L.C., and K.C. with the due process protections guaranteed under IDEA; and

3. Under 42 U.S.C. § 1983, for failure to provide due process protections guaranteed by the Due Process Clause of the Fifth Amendment.

The Defendants have moved for summary judgment on several grounds:

1. Plaintiffs cannot sue under 42 U.S.C. § 1983 for IDEA violations;

2. Plaintiffs failed to state a claim for violations of IDEA's due process guarantees;

3. State Defendants are entitled to immunity from § 1983 liability under the Eleventh Amendment; and

4. Defendant Taylor is entitled to qualified immunity.

### Analysis

#### I. Standard of Review

The Defendants move this court for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1552 (10th Cir.1997).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

---

1. Plaintiffs have styled their case as a class action. However, plaintiffs have not applied for class certification, and the court has not granted it.

that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also Gonzales v. Millers Cas. Ins. Co.,* 923 F.2d 1417, 1419 (10th Cir.1991). The non-moving party must set forth specific facts showing a genuine issue for trial; mere allegations and references to the pleadings will not suffice. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 The judicial review of IDEA cases "differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1471 (9th Cir.1993), *cert. denied,* 513 U.S. 825, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994). The IDEA specifically requires a district court to "receive the records of the administrative proceedings, ... hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence," grant any appropriate relief. 20 U.S.C. § 1415(i)(2)(B). As such, a district court "does not use the substantial evidence standard typically applied in the review of administrative agency decisions, 'but instead must decide independently whether the requirements of the IDEA are met.'" *Murray v. Montrose County Sch. Dist.,* 51 F.3d 921, 927 (10th Cir.1995) (quoting *Board of Educ. v. Illinois State*

*Bd.,* 41 F.3d 1162, 1167 (7th Cir.1994)). Yet, under this standard, courts cannot simply disregard the administrative decision; rather, each court must give the decision "due weight." *Board of Educ. v. Rowley,* 458 U.S. 176, 205–06, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *see also Fuhrmann v. East Hanover Bd. of Educ.,* 993 F.2d 1031, 1034 (3d Cir.1993). The Tenth Circuit has not defined "due weight,"[2] but it cannot mean that the district court is free to simply adopt the state administrative findings without an independent re-examination of the evidence. *Murray,* 51 F.3d at 927; *see also Doe v. Metropolitan Nashville Public Schools,* 133 F.3d 384, 387 (6th Cir.1998). Nor can "due weight" mean that the district court is free to substitute its own notions of sound education policy for those of the educational agencies it reviews. *Rowley,* 458 U.S. at 205, 102 S.Ct. 3034. This has been described as a "modified de novo review," or as "involved oversight." *Murray,* 51 F.3d at 927; *see also Town of Burlington v. Dep't of Educ.,* 736 F.2d 773, 791–92 (1st Cir.1984), *aff'd on other grounds,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

## II. Section 1983 Claims

### A. May Plaintiffs Sue Under 42 U.S.C. § 1983 for IDEA Violations?

 Plaintiffs have two Section 1983 claims, based on allegations that their con-

---

**2.** While the Tenth Circuit has not defined "due weight," the First, Fourth, and Eight Circuits have attempted to further describe this amorphous standard. In *Fort Zumwalt Sch. Dist. v. Clynes,* the Eight Circuit found the weight due is less than that under the "substantial evidence" test, but directed that a court should consider the state hearing panel's expertise and opportunity to observe demeanor evidence. 119 F.3d 607, 610 (8th Cir.1997). In *Hartmann v. Loudoun County Bd. of Educ.,* the Fourth Circuit determined that "[a]dministrative findings in an IDEA case are entitled to be considered prima facie

correct, and the district court, if it is not going to follow them, is required to explain why it does not." 118 F.3d 996, 1000–01 (4th Cir.1997) (citations omitted). In *Roland M. v. Concord Sch. Comm,* the First Circuit found that a "court must render ... a bounded, independent decision[ ]—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court." 910 F.2d 983, 989–90 (1st Cir.1990), *cert. denied,* 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

stitutional due process rights and statutory rights under IDEA were violated. Plaintiffs assert that they can bring a Section 1983 claim for alleged damages stemming from alleged IDEA violations. However, the Tenth Circuit has held that as a general matter, Section 1983 is not available to enforce the State's statutory obligations under the IDEA. *See Padilla v. School Dist. No. 1,* 233 F.3d 1268, 1272–73 (10th Cir.2000) (IDEA provides comprehensive enforcement scheme that precludes § 1983 suit as remedy for IDEA violations). Such claims must be brought pursuant to the provisions of the IDEA itself and will be addressed in a separate section below. Therefore, Defendants are entitled to summary judgment on the Section 1983 claim based on violation of the IDEA. The only remaining viable Section 1983 claim is one based on an allegation of constitutional due process violations and the court will therefore analyze the Section 1983 claim accordingly.

### B. Did Defendants Violate Plaintiffs' Due Process Rights Under Section 1983?

Section 1983 provides that "every person who, under color of [law] ... subjects or causes to be subjected, any citizen of the United States ... the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress...." 42 U.S.C. § 1983.

■ The first inquiry in any Section 1983 suit is whether the plaintiff has been deprived of a right "secured by the constitution and laws" of the United States. The second requirement of a Section 1983 action is that the alleged deprivation occur under color of state law. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Defendants do not dispute the second requirement and

thus the issue of Plaintiffs' due process rights, the only remaining Section 1983 cause of action, is the question before the court.

Plaintiffs claim that the IDEA due process hearing and administrative procedures in this matter violated their due process rights because they believe that the hearing officer, Haws, and the review panel were biased in favor of the school district. They also claim that Mae Taylor improperly interfered with the hearing officer selection process, testified as a witness at the hearing, and allegedly told the panel how to uphold Haw's decision and order, and that these allegations support a due process claim.

■ The fundamental basis for due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The opportunity for a hearing provides due process only if preceded by notice "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *McKee v. Heggy,* 703 F.2d 479, 481 (10th Cir.1983). In the context of the IDEA, procedural due process is afforded where the party has legal representation and the opportunity for cross-examination of witnesses. *See Leon v. State of Michigan Bd. of Educ.,* 807 F.Supp. 1278, 1285 (E.D.Mich.1992). The IDEA itself gives Plaintiffs procedural rights to "be accompanied and advised by counsel ... to present evidence and confront, cross-examine, and compel the attendance of witnesses; ... to a written ... record of such hearing; and ... to written ... findings of fact and decisions ...." 20 U.S.C. § 1415(h)(1)-(4). Plaintiffs do not offer allegations that any of these rights were not provided to them. Therefore, even if the court were to

accept Plaintiffs' characterization of the process, Defendants are entitled to summary judgement on this claim because Plaintiffs have not alleged any particular process which they were denied.

 As to Plaintiffs' general allegations based on the appearance of impropriety, due process also entitles an individual to a "fair hearing before an impartial tribunal." *Roach v. Nat'l. Trans. Safety Bd.*, 804 F.2d 1147 (10th Cir.1986). Plaintiffs' main challenge to the impartiality of the tribunal stems from the fact that the District picked Haws instead of the alternative officers submitted for consideration by Plaintiffs. It is not a violation of IDEA or due process for the State Educational Agency to choose a hearing officer without any input from parents. *See Brimmer v. Traverse City Area Public Schools*, 872 F.Supp. 447, 449–50 (W.D.Mich.1994). Nor does an adverse ruling make the proceedings unfair or biased. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("judicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion."). "[I]n order for a hearing to afford an individual due process, the hearing tribunal must be impartial. A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing." *Corstvet v. Boger*, 757 F.2d 223 (10th Cir.1985). "[A] substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that the hearing is unfair." *Roberts v. Morton*, 549 F.2d 158, 164 (10th Cir.1976), cert. denied, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Tribunals enjoy a presumption that they are not biased unless it is substantially demonstrated that they are actually biased with respect to factual issues being adjudicated. *See, e.g., Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir.1986); *see also Harline v. Drug Enforcement Administration*, 148 F.3d 1199, 1204 (10th Cir.1998). Plaintiffs

have not alleged any specific factual determinations which demonstrate bias. They merely suggest that because the District picked Haws, his bias should be presumed. But, even an appearance of impropriety does not support an inference of bias. *See, e.g., Harline*, 148 F.3d at 1204 (hearing officer worked for prosecuting agency, held impartial); *Leon*, 807 F.Supp. at 1284 (hearing officer was employee of an unrelated school district, held impartial). Haws and the appeals panel members have, through affidavits, declared their impartiality and objectivity in adjudicating the matter. Plaintiffs have offered no evidence to counter these declarations, and therefore Defendants are entitled to summary judgment on the Section 1983 due process claim.

### III. Did Plaintiffs Fail to State A Claim For Violations Of IDEA's Due Process Guarantees?

Plaintiffs claim that Defendants violated the IDEA in that they failed to provide an impartial hearing, by: 1) ignoring the statutory 45–day due process hearing deadline; 2) manipulating the process to ensure pro-district hearing officers; and 3) allowing Mae Taylor to testify at due process hearings.

 As to Plaintiffs first contention, that their IDEA rights were violated because the 45–day time limit was exceeded, the IDEA explicitly allows parties to request an extension of time, and gives hearing officers discretion to grant an extension upon request. 34 C.F.R. § 300.511(c) ("A hearing or reviewing officer may grant specific extensions of time beyond the periods set out [in the regulation] at the request of either party"). Here, Defendants asked for and were granted an extension. This is perfectly permissible under the rule.

■ Considering Plaintiffs' second contention, in which Plaintiffs allege Defendants manipulated the process in their appointment of hearing officers, the court does not find an IDEA violation. Under its procedural safeguards, the IDEA ensures a "minimum standard of impartiality," which prohibits "an employee of the State education agency or the local education agency involved in the education of the child" from conducting the due process hearing. 20 U.S.C. § 1415(f)(3). Under this statute's implementing regulations, a hearing officer cannot be a "person having a personal or professional interest that would conflict with his or her objectivity in the hearing." 34 C.F.R. § 300.508. In this case, Haws is not, nor has he ever been, an employee of either the District or the State Office of Education. Nor is there any evidence that Haws has any personal or professional interest that would have conflicted with his objectivity. The only factual allegation that the court finds Plaintiffs put forward to suggest otherwise is the fact that Haws wrote a letter to the District afterward saying that he would be pleased to serve again. This fact, however, is not strong enough to constitute a "professional interest." If it did, then any arbitrator or mediator who took fees would automatically be considered biased.

Turning to the appellate review of Haws' decision, the IDEA only requires that the reviewing officer or panel make an "independent decision." 20 U.S.C. § 1415(c). No member of the reviewing panel was an employee of the Office of Education and they have each declared, in affidavits, that they made their determination independently. Plaintiffs have not produced any evidence to suggest otherwise and have also failed to advanced a persuasive argument suggesting otherwise.

■ Finally, as to Plaintiffs' third contention, it appears that Plaintiffs object to Mae Taylor's testimony because she is bi-ased. According to Plaintiffs, Taylor is biased because she suggested that the Superintendent appoint Haws. The court finds no provision in the IDEA that prohibits the testimony of a witness such as Taylor, who makes suggestions regarding who should be the hearing officer, and Plaintiffs have not cited any. Taylor was available for full cross-examination and the IDEA requires no more. This evidence thus does not suggest an IDEA violation. Therefore, Defendants are also entitled to summary judgment on Plaintiffs' IDEA claim.

## IV. *Immunity Issues*

Plaintiffs name the State Board of Education, the State Office of Education, the State Superintendent in his official capacity, and the Federal and State Compliance Officer, Mae Taylor, in her official and individual capacities. They also name the Ogden School District and several District administrators in their official capacities. Defendants raise both Eleventh Amendment and Qualified Immunity claims for each of these Defendants.

### A. *Are The State Defendants Entitled To Immunity From § 1983 Liability Under The Eleventh Amendment?*

■ The Eleventh Amendment bars suits against non-consenting states, whether brought by their own citizens or by citizens of other states. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67. 100 (1984); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Amendment bars suits seeking monetary, equitable, and injunctive relief against a state or arms of the state. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144–45, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

State agencies are considered an "arm of the state for Eleventh Amendment purposes." *Hensel v. Office of the Chief Admin. Hearing Officer,* 38 F.3d 505, 508 (10th Cir.1994). As undisputed state agencies, the Utah State Office of Education and the Utah State Board of Education are therefore immune from Plaintiffs' claims.

■ Consequently, for Plaintiffs to maintain their Section 1983 action against the State of Utah or its agencies, the State must have either waived immunity, or Congress must have specifically abrogated Eleventh Amendment immunity. *Eastwood v. Dept. of Corrections,* 846 F.2d 627, 631 (10th Cir.1988). The State Board of Education and State Office of Education have neither waived their Eleventh Amendment immunity nor consented to this suit. *See Richins v. Industrial Constr. Inc.,* 502 F.2d 1051 (10th Cir.1974) (Utah Governmental Immunity Act does not waive Eleventh Amendment immunity). Moreover, the Supreme Court has held that Congress' passage of 42 U.S.C. § 1983 was not intended to abrogate Eleventh Amendment Immunity. *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Ellis v. University of Kansas Med. Cir.,* 163 F.3d 1186, 1196 & n.13 (10th Cir.1998). Accordingly, Defendant agencies are entitled to immunity from Section 1983 liability under the Eleventh Amendment.

■ Similarly, state officials sued in their official capacities are entitled to Eleventh Amendment Immunity as well. It is well settled that entities entitled to Eleventh Amendment immunity are not "persons" under the civil rights statutes and cannot be sued under these provisions. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Harris v. Champion,* 51 F.3d 901, 905–906 (10th Cir.1995). State officials sued for damages in their official capacities

are also not considered "persons" because they assume the identity of the state agency that employs them. *Will,* 491 U.S. at 71, 109 S.Ct. 2304; Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, because state officials sued in their official capacities are merely an alter ego of the government entity which employs them, state officials are immune in a Section 1983 suit.

Therefore, all Defendants are entitled to Eleventh Amendment immunity except Mae Taylor in her individual capacity and the District. However, as discussed below, these Defendants are entitled to qualified immunity against Plaintiffs' Section 1983 claims.

**B.** *Are Defendants Taylor And The District Entitled To Qualified Immunity?*

■ In considering whether a defendant is entitled to qualified immunity, courts consider first whether the facts alleged demonstrate that the government official's conduct violated a constitutional right, and second, whether the right was clearly established in light of the specific factual context of the case. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

Plaintiffs claim the IDEA due process hearing and administrative review procedures violated their due process rights because, in short, the hearing officer and review panel were biased in favor of school districts, and because Mae Taylor inappropriately interfered with the selection process, testified as a witness at the hearing, and allegedly told the hearing panel to hold up Dr. Haws' Decision and Order. As discussed above in the section on due process violation, there was no constitutional violation. Furthermore, each hearing officer has offered an affidavit saying that Taylor did not communicate with

them except at hearings and when she informed the officers of their appointments. Plaintiffs have offered no evidence to counter these assertions, and have only offered the assertions of counsel that the officers were prejudiced against Plaintiffs.

 Even assuming that her activity may have "tainted" the process such that it was a due process violation, however, Taylor would be entitled to qualified immunity because the right not to have an official participate in the hearing process as she did was not clearly established at the time. To be clearly established, there must be a " 'Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.' " *Horstkoetter v. Department of Pub. Safety,* 159 F.3d 1265 1278 (10th Cir.1998) (quoting *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992)). Plaintiffs have not pointed to any such opinion, and, in fact, courts have held that actions similar to those by Taylor (i.e. appointing hearing officers) did not violate the IDEA or the Constitution. *See Leon,* 807 F.Supp. at 1283. Therefore, even if the court found that Plaintiffs had alleged some violation, Taylor would be entitled to qualified immunity.

As to the only remaining Defendant, the District, Defendants argue that even if Plaintiffs could allege a due process violation, they could not establish that the District, a municipal entity, is liable. For municipal liability to be found, a plaintiff must show: "(1) the existence of a ... custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Plaintiffs have not alleged the existence of a policy which would cause a constitutional violation, and Defendants have offered evidence

demonstrating that the District had an official policy mandating complete compliance with IDEA. Therefore, even if the court found a violation existed, Defendants are entitled to summary judgment because Plaintiffs have not alleged sufficient facts to support a finding of municipal liability.

Accordingly, Defendants are entitled to summary judgment on their claims that they are immune from Section 1983 liability under the Eleventh Amendment and that Taylor and the District are entitled to qualified immunity.

### ORDER

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED.